So Ordered.

Dated: September 30, 2024



Katherine Maloney Perhach
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| In re: | Case No. 23-23979-kmp |
|---|---|
| Axia M. Mims, | Chapter 7 |
| Debtor. | |

Patrick S. Layng,
United States Trustee,

        Plaintiff,

v.     Adv. No. 23-2131

Axia M. Mims,

        Defendant.

**DECISION AND ORDER DENYING DEBTOR-DEFENDANT'S MOTION TO DISMISS**

      The United States Trustee filed this adversary proceeding seeking to deny the Debtor's discharge under § 727(a)(3), (a)(4)(A), and (a)(5). The United States Trustee alleges that (1) the Debtor unjustifiably failed to keep records from which her financial condition or business transactions could be ascertained; (2) the Debtor failed to satisfactorily explain a loss of assets; and (3) the Debtor made false oaths or accounts in her bankruptcy case. The Debtor's receipt and disposition of $20,833 in proceeds from the Small Business Administration's Paycheck Protection Program, and the Debtor's statements made under oath on her bankruptcy schedules, on her Statement of Financial Affairs, and at the meeting of creditors form the basis for the United States Trustee's claims. The Debtor has moved to dismiss all of the claims for failure to state a claim upon which relief can be granted. Accepting as true the factual allegations made in the Complaint, the United States Trustee has stated plausible claims to deny the Debtor's discharge under § 727(a)(3), (a)(4)(A), and (a)(5), so the Debtor's motion to dismiss is denied.

## Statement of Facts

On or about May 18, 2021, the Debtor applied for a Small Business Administration Paycheck Protection Program loan (the "PPP loan"). Complaint, Exhibit 1. The application stated it was made on behalf of a sole proprietorship. *Id*., Exhibit 1. It stated the business's legal name was "Axia Mims" and used the Debtor's Social Security number as the business's taxpayer identification number. *Id*. ¶ 33, Exhibit 1. The application represented that the business had been established on January 1, 2019, and that it had total gross income of $169,000 for 2020. *Id*. According to the application, the loan was for "payroll expenses." *Id*. ¶ 34, Exhibit 1. As part of the PPP loan application process, the Debtor was required to "maintain records demonstrating the use of the PPP loan proceeds." *Id*. ¶ 41.

The Debtor's application was approved. Fountainhead SBK LLC loaned the Debtor $20,833 for the operation of a business in the "Nursing Care Facilities" industry. *Id*. ¶ 21. On May 21, 2021, Fountainhead deposited $20,833 into the Debtor's personal Chime account. *Id*. ¶ 53-54. The bank statements for the Chime account indicate a $10,000 withdrawal to Chase account *4581 on May 24, 2021. *Id*. ¶ 55. They also show a second $10,000 withdrawal to the same Chase account on May 26, 2021. *Id*. The Debtor stated that she does not own the Chase account ending in *4581. *Id*. ¶ 56.

On August 31, 2023, the Debtor filed a Chapter 7 bankruptcy case. She testified at the § 341 meeting of creditors that the PPP loan was used for her nonfiling spouse's trucking business. *Id*. ¶ 30. The Debtor "explained that $13,000 of the PPP loan proceeds were used to purchase a 2001 Ford F-650 truck, and that the remaining funds were used for auto insurance, tires and repairs, employment insurance, permits and DOT clearance, and storage fees." *Id*. ¶ 45. In support of this explanation, she provided a purchase agreement for the Ford F-650 truck entered into by Milwaukee A&M LLC, the trucking business that her nonfiling spouse "tried to start - never got off the ground." *Id*. ¶ 24, 46, Exhibit 2. The purchase agreement showed that Milwaukee A&M LLC agreed "to pay $12,000 in total, but paid a $9,900 cash deposit, with a balance due of $2,100." *Id*. ¶ 46, Exhibit 2. No receipts or invoices were provided demonstrating how the PPP loan proceeds were used. *Id*. ¶ 47.

The Debtor did not disclose the operation of a sole proprietorship that had a total gross income of $169,000 for 2020 on her Schedule A/B or on her Statement of Financial Affairs as stated on the PPP loan application. *Id*. ¶ 18, 33, 37, 74.

The Debtor did not disclose any interests in any business on Schedule A/B when she filed her bankruptcy case. *Id*. ¶ 18. On her Statement of Financial Affairs, the Debtor disclosed a business called Awesome & Amazing Adult Family Home LLC, an adult group home. *Id*. ¶ 23. She indicated that she established the LLC, but "never ran group home." *Id*. At the § 341 meeting of creditors, the Debtor testified that she never ran the group home because she was not able to obtain a license. *Id*. ¶ 30.

The Debtor did not disclose any income from operating a business on her Statement of Financial Affairs in response to questions about her income for the years 2021, 2022, and 2023. *Id*. ¶ 19, 52. The Debtor did not disclose any income from operating a business, but Awesome & Amazing Adult Family Home LLC had a business bank account at Chase for depositing business income. *Id.* ¶ 48-49, 51. The statements from that bank account show deposits of at least $45,052 from May 2021 through November 30, 2021. *Id.* ¶ 49-50.

The Debtor testified at the § 341 meeting of creditors that she received the PPP loan on behalf of Awesome & Amazing Adult Family Home LLC. *Id.* ¶ 30. This is inconsistent with what is shown on the PPP loan application. The PPP loan application has the Debtor as the applicant, provides her Social Security number, and states that the Debtor was applying to receive the PPP loan as a sole proprietor. *Id.* ¶ 33, Ex. 1.

The Debtor's PPP loan was forgiven in October 2021. *Id.* ¶ 40. The PPP loan forgiveness application required the Debtor to make financial statements about her business. *Id.* ¶ 42. The Debtor disclosed on her Statement of Financial Affairs that she had not given a financial statement to anyone about her business. *Id.* ¶ 25.

## Legal Standard

The Debtor seeks dismissal of the Complaint based on a "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6) (incorporated in adversary proceedings by Fed. R. Bankr. P. 7012). In considering a Rule 12(b)(6) motion, the Court accepts as true all of the factual allegations stated in a complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The Court then determines whether these allegations are sufficient to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint must contain factual allegations that nudge the claims "across the line from conceivable to plausible." *Id.* at 680 (quoting *Twombly*, 550 U.S. at 570).

"Plausibility" in the context of a Rule 12(b)(6) motion "does not imply that the [ ] court should decide whose version to believe, or which version is more likely than not." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). Instead, "the plaintiff must give enough details about the subject-matter of the case to present a story that holds together. In other words, the court will ask itself *could* these things have happened, not *did* they happen." *Id.*

Because the United States Trustee's claim for denial of the Debtor's discharge under § 727(a)(4)(A) based on a false oath or account has fraudulent intent as an element, the Complaint must plead that claim with particularity. Fed. R. Civ. P. 9(b) (incorporated in adversary proceedings by Fed. R. Bankr. P. 7009). The rule provides that "[i]n alleging fraud or

mistake, a party must state with particularity the circumstances constituting fraud or mistake." *Id*. However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id*. To state the circumstances with particularity, a complaint must include the "who, what, when, where, and how of the fraud—the first paragraph of any newspaper story." *United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 776 (7th Cir. 2016).

## Analysis

I.  **The United States Trustee has stated a claim for denial of discharge under 11 U.S.C. § 727(a)(3) based on the Debtor's unjustified failure to keep records from which her financial condition or business transactions can be ascertained.**

The United States Trustee's Complaint first seeks denial of the Debtor's discharge based on an unjustified failure to keep records from which her financial condition or business transactions can be ascertained. Section 727(a)(3) of the Bankruptcy Code requires denial of a Chapter 7 debtor's discharge if:

> the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

Section 727(a)(3) "ensures that trustees and creditors will receive sufficient information to enable them to trace the debtor's financial history; to ascertain the debtor's financial condition; and to reconstruct the debtor's financial transactions." *In re Juzwiak*, 89 F.3d 424, 427-28 (7th Cir. 1996).

The United States Trustee has plausibly stated a claim that the Debtor concealed or failed to keep records from which her financial condition or business transactions might be ascertained. The United States Trustee has alleged that the Debtor received and disposed of $20,833 in PPP loan proceeds in 2021. The United States Trustee has further alleged that the Debtor failed to keep records regarding the disposition of the PPP loan proceeds or records substantiating the use of the PPP loan proceeds.

In support of his allegations, the United States Trustee alleges that $20,833 in PPP loan proceeds were deposited into the Debtor's Chime account. Complaint ¶ 53-54. Three days after the deposit of the PPP loan proceeds, $10,000 was withdrawn from the Debtor's Chime account and sent to Chase account *4581. *Id*. ¶ 55. Five days after the deposit of the PPP loan proceeds, another $10,000 was withdrawn from the Debtor's Chime account and sent to the same Chase account. *Id*. The Debtor informed the United States Trustee that she does not own Chase

account *4581 and she has not provided records for Chase account *4581 to the United States Trustee.  *Id.* ¶ 56, 61.  The United States Trustee has plausibly stated a claim that the Debtor has failed to keep records from which her financial condition or business transactions might be ascertained.

The Complaint alleges that the Debtor has not offered a complete explanation or records that show the disposition of the PPP loan proceeds.  According to the Debtor, $13,000 of the PPP loan proceeds were used to purchase a 2001 Ford F-650 truck and the remaining funds were used for auto insurance, tires and repairs, employment insurance, permits and DOT clearance, and storage fees.  *Id.* ¶ 45.  The Debtor provided a purchase agreement for the Ford truck which showed that her nonfiling spouse's trucking business agreed to pay $12,000 for the Ford truck, that the seller received $9,900 in cash, but that $2,100 remained due.  *Id.* ¶ 46, Ex. 2.  The Debtor has only provided a record that $9,900 was spent by the Debtor's nonfiling spouse's trucking business on a Ford truck.  No records have been provided to show that the $9,900 came from the PPP loan proceeds.  Additionally, no records have been provided to explain how the remaining $10,933 in PPP loan proceeds were used.

The Debtor seems to want the Court to rule as a matter of law on a motion to dismiss without any evidence or testimony that the Debtor need not provide every receipt for every dollar spent of the PPP loan proceeds, that the Debtor should be excused from any responsibility to keep such records due to a lack of education and a lack of business experience, that failing to provide receipts for half of the PPP loan proceeds is acceptable because this is not a case of "epic proportions," that the Debtor should not "be held to the same standard as complex businesses," and that the Debtor was justified in failing to keep records because she "did her best to answer the bankruptcy schedules and questions as honest as possible more than two (2) years after receiving the improper PPP loan, not knowing that she would have to file bankruptcy years later."  These are fact issues related to whether the Debtor's actions were justified.  The only matter before the Court is whether the United States Trustee has pled sufficient facts to state a plausible claim that the Debtor unjustifiably concealed or failed to keep records from which her financial condition or business transactions could be ascertained.  Taking the facts pled in the Complaint as true, the United States Trustee has plausibly stated such a claim under § 727(a)(3).

II. **The United States Trustee has stated a claim for denial of discharge under § 727(a)(5) based on the Debtor's failure to satisfactorily explain a loss of assets.**

The United States Trustee's Complaint also seeks denial of the Debtor's discharge based on the Debtor's failure to satisfactorily explain the loss of assets.  Section 727(a)(5) requires denial of a Chapter 7 debtor's discharge if "the debtor has failed to explain satisfactorily . . . any loss of assets or deficiency of assets to meet the debtor's liabilities."  Section 727(a)(5) "is broadly drawn and clearly gives a court broad power to decline to grant a discharge in bankruptcy where the debtor does not adequately explain a shortage, loss, or disappearance of assets."  *In re Martin*, 698 F.2d 883, 886 (7th Cir. 1983).  For an explanation to be "satisfactory," it " 'must consist of more than ... vague, indefinite, and uncorroborated' assertions by the

debtor." *In re D'Agnese*, 86 F.3d 732, 734 (7th Cir. 1996) (quoting *Baum v. Earl Millikin, Inc.*, 359 F.2d 811, 814 (7th Cir. 1966)). It "must be good enough to eliminate the need for the Court to speculate as to what happened to all the assets." *Id.* at 735 (quoting *In re Martin*, 145 B.R. 933, 950 (Bankr. N.D. Ill. 1992)).

The United States Trustee has plausibly alleged that there was a loss or disappearance of assets. Taking the facts alleged in the Complaint as true, the Debtor received a $20,833 PPP loan. Complaint ¶ 21. The loan proceeds were deposited into the Debtor's personal Chime account. *Id.* ¶ 53-54. The Debtor transferred $10,000 to a Chase bank account that she does not own within three days of the deposit of the PPP loan proceeds and she transferred another $10,000 to the same Chase bank account that she does not own within five days of the deposit of the PPP loan proceeds. *Id.* ¶ 55-56.

The United States Trustee has also plausibly alleged that the Debtor has not satisfactorily explained the loss or disposition of the $20,833 in PPP loan proceeds. At the § 341 meeting of creditors, the Debtor explained that the PPP funds were used for her nonfiling spouse's trucking business. *Id.* ¶ 30. She asserted that $13,000 of the PPP loan proceeds went to purchase a Ford truck. *Id.* ¶ 45. The Debtor provided a purchase agreement showing her nonfiling spouse's trucking business as the buyer, a purchase price of $12,000, a $9,900 cash deposit towards the purchase of the truck, and a balance due of $2,100. *Id.* ¶ 46, Ex. 2. The Debtor further stated that the remaining PPP funds were "used for auto insurance, tires and repairs, employment insurance, permits and DOT clearance, and storage fees." *Id.* ¶ 45. No receipts or bank statements or other documents have been provided to substantiate the $9,900 deposit coming from the PPP loan proceeds. *Id.* ¶ 47. No receipts or bank statements or other documents have been provided to show that the $2,100 balance due on the truck was paid from the PPP loan proceeds. *Id.* No receipts or bank statements or other documents have been provided to show that the auto insurance, tires and repairs, employment insurance, permits and DOT clearance, and storage fees were paid from the PPP loan proceeds. *Id.* No receipts or bank statements or other documents have been provided to show how $10,933 of the $20,833 in PPP loan proceeds were used. *Id.* The Complaint plausibly alleges that the Debtor has only offered "vague, indefinite, and uncorroborated" statements about the use of the PPP loan proceeds. The Complaint states a plausible claim under § 727(a)(5).

### III. The United States Trustee has stated a claim for denial of discharge under § 727(a)(4)(A) based on the Debtor's alleged false oaths or accounts in her bankruptcy case.

The United States Trustee also seeks denial of the Debtor's discharge based on false oaths or accounts made in the Debtor's bankruptcy case. Section 727(a)(4) requires denial of a Chapter 7 debtor's discharge if "the debtor knowingly and fraudulently, in or in connection with the case" "made a false oath or account." The section requires proof of five elements: (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the

statement related materially to the bankruptcy case. *Stamat v. Neary*, 635 F.3d 974, 978 (7th Cir. 2011).

### A. **The Complaint alleges that the Debtor made false statements under oath.**

The Complaint alleges that the Debtor made a number of false statements under oath. "Omissions from bankruptcy schedules and statement of financial affairs constitute a false oath for purposes of section 727(a)(4)(A)." *Layng v. Pansier (In re Pansier)*, 613 B.R. 119, 160 (Bankr. E.D. Wis. 2020). "False testimony given during a section 341 creditors meeting or a Rule 2004 examination also constitutes a false statement." *Id.*

> i. *The Complaint alleges that the Debtor omitted income from a business or businesses from her Statement of Financial Affairs.*

To start, the Complaint plausibly alleges that the Debtor had income from a business or businesses but did not disclose this on her Statement of Financial Affairs. The Complaint says:

> 19. . . . The Debtor did not disclose any income from the operation of a business in response to questions 4 or 5 [on the Statement of Financial Affairs]. ECF No. 16 at 36-37.
>
> 23. The Defendant disclosed Awesome & Amazing Adult Family Home LLC, an adult group home [on the Statement of Financial Affairs]. The Defendant indicated that she established the LLC, but "never ran group home."
>
> 30. [At the § 341 meeting of creditors,] Defendant testified that she never ran the group home because she was not able to obtain a license.
>
> 48. The Defendant did provide copies of Chase bank account *2981, in the name of Awesome & Amazing Adult Family Home LLC from May 2021 through March 2022.
>
> 51. Upon information and belief, Awesome & Amazing Adult Family Home LLC's Chase account *2981 is a business account for depositing business income.
>
> 50. Accordingly, the Chase account *2981 indicates deposits of at least $45,052 from May 2021 through November 30, 2021.
>
> 52. Although Chase account *2981 indicates deposits of at least $45,052 in 2021, the Defendant did not disclose the receipt of

any business income for 2021 on the Statement of Financial
Affairs.

The Complaint alleges that the Debtor's Statement of Financial Affairs did not disclose any income from the operation of a business in 2021. However, a bank account allegedly belonging to Awesome & Amazing Adult Family Home LLC had deposits of at least $45,052 in 2021. This plausibly suggests that the Debtor had income from the operation of a business that she did not disclose. It also plausibly suggests that the Debtor ran the Awesome & Amazing Adult Family Home business, meaning that the disclosure that she never ran the group home in her Statement of Financial Affairs and her testimony at the § 341 meeting of creditors would have been false.

> ii. *The Complaint alleges that the Debtor falsely stated that she received the PPP loan on behalf of Awesome & Amazing Adult Family Home LLC.*

The Complaint also alleges that the Debtor made a false statement in her § 341 meeting testimony when she stated she had received the PPP loan on behalf of Awesome & Amazing Adult Family Home LLC. According to the Complaint, the Debtor admitted at the § 341 meeting "that she obtained the PPP loan from Fountainhead SBF on behalf of her group home business." Complaint ¶ 30. The Complaint alleges that the Debtor received the PPP loan acting as a sole proprietor. The box for "sole proprietorship" was checked on the PPP loan application. *Id.*, Exhibit 1. The "application indicates that the business legal name is 'Axia Mims,' and uses the Defendant's social security number as the business TIN." *Id.* ¶ 33.

> iii. *The Complaint alleges that the Debtor failed to disclose a sole proprietorship.*

The facts alleged in the Complaint about the receipt of PPP loan proceeds by the Debtor as a sole proprietorship also plausibly allege that the Debtor had an interest in a business that she did not disclose on Schedule A/B. The Complaint states that the Debtor did not disclose any interests in any business on Schedule A/B. Complaint ¶ 18. The Debtor's PPP loan application states that she had a business in 2021 with total gross income of $169,000 for 2020. *Id.* ¶ 33, Exhibit 1. The United States Trustee has plausibly alleged that the Debtor maintained a sole proprietorship that she did not disclose in this bankruptcy case.

> iv. *The Complaint alleges that the Debtor failed to disclose that she had given a financial statement about her business.*

The Complaint alleges that the Debtor disclosed on her Statement of Financial Affairs that she did not give a financial statement to anyone about her business. *Id.* ¶ 25. The United States Trustee further alleges that the Debtor's PPP loan was forgiven and that the PPP loan forgiveness application required her to make financial statements about her business. *Id.* ¶ 42,

76. However, the Debtor failed to disclose that she provided a financial statement about her business on the Statement of Financial Affairs. *Id.* ¶ 76.

### B. The Complaint alleges that the Debtor knew her statements were false and made them with fraudulent intent.

Having alleged that the Debtor made a number of false statements under oath, the Complaint also plausibly alleges the next two elements of § 727(a)(4)(A), that the Debtor knew these statements were false and made them with fraudulent intent. A showing of reckless disregard for the truth is sufficient to prove fraudulent intent under § 727(a)(4)(A). *In re Kempff*, 847 F.3d 444, 449 (7th Cir. 2017). A pattern of false statements and omissions can demonstrate reckless disregard for the truth. *Stamat*, 635 F.3d at 982. Accepting the facts in the Complaint as true, the United States Trustee has alleged that the Debtor knew the statements and omissions were false and made the statements with at least a reckless disregard for the truth.

### C. The Complaint alleges that the omissions and false statements related materially to the bankruptcy case.

The allegations in the Complaint also satisfy the last element of § 727(a)(4)(A), that the debtor's false statements relate materially to the bankruptcy case. A fact is material "if it bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of the debtor's property." *Lardas v. Grcic*, 847 F.3d 561, 570 (7th Cir. 2017) (quoting *Stamat*, 635 F.3d at 982). "In determining whether or not an omission is material, the issue is not merely the value of the omitted assets or whether the omission was detrimental to creditors." *Stamat*, 635 F.3d at 982. This is in part because "successful functioning of the Bankruptcy Code hinges both upon the bankrupt's veracity and his willingness to make a full disclosure." *Lardas*, 847 F.3d at 570 (citation omitted).

The United States Trustee has pled sufficient facts to plausibly state a claim that the Debtor's false statements or omissions are material and bear a relationship to the Debtor's business transactions or estate, concern the discovery of assets or business dealings, or concern the existence and disposition of the Debtor's property. The Debtor's alleged omission of income from a business when bank records show that the business had deposits of $45,052 from May 2021 through November 2021 concerns the discovery of assets and the existence and disposition of property. It also bears a relationship to the Debtor's business transactions and concerns the Debtor's business dealings. The United States Trustee has also alleged that the Debtor made several other false statements or omissions that bear a relationship to the Debtor's business transactions and concern the Debtor's business dealings, like (1) the alleged false statement that the Debtor received the PPP loan on behalf of Awesome & Amazing Adult Family Home LLC, (2) the Debtor's alleged failure to disclose a sole proprietorship; and (3) the Debtor's alleged failure to disclose that she had given a financial statement about her business.

**IV.     The Complaint's claim for denial of discharge under § 727(a)(4)(A) is stated with particularity.**

The Complaint also pleads the § 727(a)(4)(A) claim with particularity.  It alleges that the Debtor made false oaths and omissions in her bankruptcy schedules that she filed with the Court and in her testimony at the § 341 meeting of creditors.  This is sufficient and states the "who, what, when, where, and how" of the claim.

## Conclusion

The Complaint in this case contains sufficient factual matter, accepted as true, to state plausible claims under § 727(a)(3), (a)(4)(A), and (a)(5) for the denial of the Debtor's discharge.  Accordingly,

IT IS THEREFORE ORDERED:  the motion to dismiss is denied.

IT IS FURTHER ORDERED:  the Debtor-Defendant must file an answer to the Complaint on or before **October 15, 2024**.

#####